D. D. Hagan v. Commissioner.
Hagan v. Commissioner
Docket No. 42394.
United States Tax Court
T.C. Memo 1954-106; 1954 Tax Ct. Memo LEXIS 141; 13 T.C.M. (CCH) 689; T.C.M. (RIA) 54212; July 26, 1954, Filed *141 William S. Duke, Esq., 801 First National Bank Building, for the petitioner. Frederick T. Carney, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves a deficiency of $4,122.84 in income tax for 1946. The issue is whether a joint venture existed between petitioner and his wife for an equal division of his distributive share of profits of a partnership in which he had an interest. Respondent concedes error in increasing petitioner's income by $202.05 for rent receipts. Findings of Fact Petitioner, and individual residing in Montgomery, Alabama, filed his income tax return for the taxable year with the collector of internal revenue for the district of Alabama. About the spring of 1945 the Chrysler Corporation desired to contract for dismantling of army tanks for salvageable parts. Petitioner tore down four tanks to determine the cost of the work. The test convinced him that substantial profit could be made under an agreement for dismantling all of the tanks, with only a remote chance of loss. Thereafter petitioner, Miller G. Williams, Pattie P. Williams, and Ted Gailbraith formed a partnership under *142 the trade name of Miller Williams and Company, with a capital of $10,000 for the purpose of performing a contract awarded to it by the Chrysler Corporation for dismantling a specified number of the tanks. The interest of each partner was in direct proportion to his capital contribution. Petitioner had no funds of his own to invest in the enterprise and the only source available to him for the necessary capital was his wife. She first declined to participate in the venture but after some discussion of the matter, including the opportunity for profit, she consented to provide $1,700 of her own money for a contribution by petitioner to the partnership. Thereafter, on May 4, 1945, petitioner's wife drew a check on her individual bank account to the order of petitioner for $1,700. Petitioner endorsed the check and delivered it to the partnership for the acquisition of a 17 per cent interest in the partnership. The account on which the check for $1,700 was drawn contained funds earned by his wife as an employee in various capacities, and a small amount remaining from salary checks petitioner endorsed to her to pay household expenses. She made a deposit of $1,600 of her own funds in the *143 account about March 6, 1945. Petitioner had no authority to draw checks against the account of his wife. He had a checking account in another bank, and it contained a small amount in it at the time his wife delivered her check to him. Before making his contribution to the partnership, petitioner and his wife orally agreed that in consideration of the capital supplied by her, and services to be performed by him, any profits derived from his interest in the partnership would be divided equally between them. In arriving at his share of the profits no account was to be given to compensation received by petitioner from the partnership for services performed. There was no discussion between petitioner and his wife as to sharing of losses. The wife assumed that if any loss was sustained she would have to share the amount equally with her husband. The agreement was never reduced to writing. Miller G. Williams and Ted Gailbraith had knowledge of the agreement between petitioner and his wife. Petitioner and his wife entered into several similar agreements prior to 1945. Petitioner supervised the dismantling of the tanks and received from the partnership as compensation for his services the *144 total amount of $600. The job of dismantling the tanks was completed in 37 working days. The partnership filed a return for 1945 disclosing profits of $97,444.64 from the contract, of which $17,063.59 was shown as distributable to petitioner. In separate returns filed by the petitioner and his wife for 1945, which was prepared by an attorney, each reported $8,101.17 as income from a joint venture with the other. Petitioner's wife invested her share of the profits of the venture in real estate in Birmingham, Alabama, and paid the tax shown in her return. Petitioner was not aware of the statute requiring joint ventures to file a partnership return. He and his wife did not file a partnership return for a joint venture. In his determination of the deficiency respondent increased petitioner's share of the profits of the partnership to $17,063.59 and included the entire amount in income of petitioner on the ground that his wife was not a partner with him in the enterprise. The petitioner and his wife entered into a bona fide joint venture for the equal sharing of his distributive share of the profits of the partnership. Opinion The parties differ only on the factual question *145 of whether a joint venture, recognizable for tax purposes, existed between petitioner and his wife for his 17 per cent interest in the partnership. Respondent regards the arrangement as a "time worn scheme to divide his [petitioner's] income and reduce his tax." The principles for determining whether the plan was real or a mere sham to divide income and reduce tax are set out in ; ; ; , and . Considering all of the evidence before us leaves no doubt that petitioner and his wife acted in good faith in the creation of a joint venture for a business purpose. Petitioner found an opportunity to engage in an enterprise for profit, in which, from actual experience, he learned that the chance of loss was negligible, but lacked the necessary capital for participation with others as members of a partnership. His only source for funds was his wife, who had her own money to risk. She first declined to participate but afterwards *146 agreed to contribute the required capital for an equal share of petitioner's interest in the partnership venture. There was no express agreement between them as to any loss sustained in the joint venture, but having had similar dealings with him in the past, she assumed that she would be required to share in any operating deficits. The partnership made considerable profit in performing the contract awarded by the Chrysler Corporation. The wife received one-half of petitioner's distributable share of the income, returned it as her income and paid the tax thereon, and invested the net proceeds in real property. The failure of petitioner to file a partnership return for the joint venture was attributable to lack of knowledge of the legal requirement. The fact that no services were contributed by the wife is not decisive. Her contribution was limited by the agreement to capital essential for the venture, and that, under the other facts here, was sufficient. (June 30, 1954); (June 30, 1954). Petitioner's liability to her was fixed by her contribution of the *147 entire capital of the joint venture. ; We accordingly conclude that respondent erred in taxing to petitioner his wife's one-half interest in his distributive share of the profits of the partnership. Respondent admits that a finding against him on the controverted question and his concession as to rental income will result in no additional tax liability. Accordingly, Decision will be entered for the petitioner.